IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FIRST MAGNUS FINANCIAL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-0079-CV-W-ODS |
| ) | |
| SUMMIT MORTGAGE, L.L.C., et al., ) | |
| ) | |
| Defendants. ) | |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS</u>

Defendants Hometown Appraisals, Inc. and Dominique Allen (collectively "Hometown") have filed a Motion to Dismiss, seeking dismissal of Plaintiff's claims against them. For the following reasons, the motion (Doc. # 90) is granted in part and denied in part.

## I. BACKGROUND

The Amended Complaint alleges Defendants participated in "a massive scheme of fraudulent real estate transactions in the greater Kansas City Area. Defendants' conduct is known in the industry as 'flipping.'" Amended Complaint (AC) at ¶ 38. Generally speaking, flipping involves the purchase of real property, the preparation of inflated appraisals for the property, and the subsequent resale of the property based on the inflated (i.e., false/fraudulent) appraisal. This inures to the detriment of not only the subsequent buyer but also the subsequent buyer's lender, who has made an under-secured loan. Id. The scheme requires participants to fill the following roles: (1) speculators, who purchase the property (often at a depressed price) then resell it; (2) mortgage hustlers, who help the person buying from the speculator obtain financing (and, if necessary, fabricate information about the property or buyer to make the transaction appear financially sound); (3) appraisal inflators, who provide appraisals that

overstate the value of the property; and, finally, (4) "enabling title companies." AC at ¶¶ 41, 48.

Plaintiff is a mortgage company that made loans to buyers, unaware the appraisals were inflated. Hometown was one of the appraisers that allegedly inflated appraisals by purposely choosing inappropriate comparable sales as guides to value or misstating the features or condition of the property being appraised. AC at ¶ 50. The Amended Complaint identifies two specific properties Hometown appraised, as well as the methods used to inflate their values. AC at ¶¶ 205, 222.[1] Plaintiff has sued, *inter alia*, the entities and individuals allegedly involved in the flipping scheme. Hometown is a defendant in Count I (violation of the Racketeer Influenced and Corrupt Organization Act, or "RICO"), Count II (RICO conspiracy), Count III (common law fraud), Count IV (negligent misrepresentation), Count V (negligence), and Count VII (civil conspiracy). Hometown is not named in Count VI.

## II. DISCUSSION

A motion to dismiss for failure to state a claim should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the Plaintiff.

### A. Compliance with Rule 9(b)

Rule 9(b) states that "the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity

---

[1] Plaintiff has represented Hometown appraised additional properties, but these appraisals cannot be considered now because these allegations are not included in the Amended Complaint.

2

required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir.), cert. denied, 540 U.S. 875 (2003). Conclusory allegations that certain conduct was "fraudulent" are insufficient. Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).

The Amended Complaint adequately describes the fraudulent conduct and the attendant circumstances. While it does not specify precise dates and times for the representations or the name of the individual who transmitted or mailed the appraisals, it has sufficiently identified a relevant time frame and other circumstances such that Hometown can respond. Contrary to Hometown's argument, Rule 9(b) does not require a plaintiff to recite the "who, what, where, when and why" of an allegedly false representation; a plaintiff must provide sufficient specificity to allow the defendant to identify the transaction and representation at issue, understand the basis for the allegation of fraud, and permit a response to the allegations. Cf. Roberts v. Francis, 128 F.3d 647, 651 &n.5 (8th Cir. 1997).

### B. The RICO Claims

#### 1. Pattern of Racketeering Activity

One of the elements of the RICO-related claims is the existence of a pattern of racketeering activity. "Racketeering activity" is defined in terms of certain specific crimes, including (as asserted by Plaintiff here) mail and wire fraud. Hometown incorporates its prior arguments regarding the lack of specificity to contend Plaintiff's claims of racketeering activity are insufficient. For the reasons stated earlier, this argument is rejected.

Hometown next argues the "pattern" requirement has not been sufficiently plead. A "'pattern of racketeering activity' requires at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). This does not mean a showing of two

3

racketeering acts within ten years of each other is, alone, sufficient to demonstrate a pattern of racketeering activity; the concept of a "pattern" requires proof "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).

> A relationship between predicate acts exists when the acts are similar in method, purpose, and result. Continuity may be demonstrated by proving a series of related predicates extending over a substantial period of time. Continuity also exists if the predicate acts or offenses are part of an ongoing entity's regular way of doing business, thereby constituting a threat of causing continuous harm in the future. Ultimately, the existence of a pattern is a question of fact.

Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 769 (8th Cir. 1992) (internal quotations omitted). Hometown contends continuity is lacking under both the closed-ended and open-ended views. Focusing on its own conduct as alleged in the Amended Complaint, Hometown contends it only participated in two transactions within one month of each other, and this is insufficient to qualify as a series of transactions occurring over a substantial period of time. Then, focusing on the scheme as a whole, Hometown relies on Plaintiff's allegation that it severed relations with the enterprise's "mortgage hustler" in December 2003 to contend there is no threat of continued racketeering activity.

There are several flaws in Hometown's argument. First, and most importantly, the threat of continued repetition does not require the racketeering activity to continue after its discovery; otherwise, the nonsensical result would be that a RICO defendant could argue "the racketeering activity was not continuous because we were caught." The key inquiry asks whether there is or was a threat of continued racketeering activity in order to distinguish isolated acts from the necessary pattern of activity; the fact that the racketeering activity stopped because it was discovered does not preclude it from qualifying as a pattern. Given the length of time the entire scheme endured, the fact Plaintiff discovered it was a victim within three months of Hometown's participation does not preclude a jury from concluding that a pattern existed.

4

The second flaw in Hometown's argument involves its focus on its own participation in the racketeering, and leads to an alternative route for establishing the necessary pattern. RICO's requirement that there be an "enterprise" (which is discussed in greater detail in the next section of this Order) suggests the proper perspective is the activities of the enterprise as a whole. Cf. United States v. Hively, 437 F.3d 752, 765 (8th Cir. 2006) (defendant was participant in a single scheme that was itself part of the larger criminal enterprise). Plaintiff alleges to have been defrauded by a scheme that lasted over a year, which demonstrates the necessary continuity.

Ultimately, it must be remembered that whether a pattern exists is a question of fact. Based on the allegations contained in the Amended Complaint, the Court cannot conclude there are no facts that can be presented that would entitle Plaintiff to a favorable verdict.

### 2. Enterprise

"[A] RICO enterprise must exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 995 (8th Cir. 1989). Hometown focuses on the third requirement, which "requires that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering." McDonough v. National Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997). "In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." Handeen v. Lemaire, 112 F.3d 1339, 1353 (8th Cir. 1997). Here, the enterprise is alleged to be companies and individuals engaged in various aspects of the real estate business, working together in their various roles to perpetuate a flipping scheme. The enterprise is alleged to have an organizational structure, division of duties/responsibilities, and a hierarchy. An enterprise can exist even if it engaged in

5

only unlawful/racketeering activity; after all, the recognized original purpose of the statute was to provide a tool for combating organized crime.  Cf. United States v. Keltner, 147 F.3d 662, 668-69 (8th Cir.), cert. denied, 525 U.S. 1032 (1998) (crime ring that did nothing but engage in robberies contained "distinct structure of more than simple conspiracies").  An organization consisting of entities that engage in both criminal and legal activities can also qualify as an enterprise; indeed, this was the situation in Atlas Pile Driving:

> Significantly, the enterprise here involved legitimate businesses. Separating the enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering.  Putting the predicate acts of mail fraud aside, the evidence still shows that the enterprise had an on-going structure and that its members were not engaged in sporadic criminal activity. Here, the enterprise, its participants and their employees sold real estate, loaned money to develop properties, performed subcontracting work, and built single-family residences.

886 F.2d at 996; see also United Healthcare Corp v. American Trade Ins. Co., Ltd, 88 F.3d 563, 570 (8th Cir. 1996) ("UHC demonstrated that HANA and its affiliated 'service' companies, including Comtell, PGM, and SUMI, Inc., operated as a continuing business unit. This association of corporations exhibited continuity in both structure and personnel in its insurance sales and marketing activities."); United States v. Darden, 70 F.3d 1507, 1521 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996) (not necessary to demonstrate enterprise has activities unrelated to the racketeering activity; "[t]he function of overseeing and coordinating the commission of several different predicate offenses and other activities on an ongoing basis is adequate to satisfy the separate existence requirement."); United States v. Kragness, 830 F.2d 842, 857 (8th Cir. 1987) ("pattern of roles" and "a continuing system of authority" existed where individuals performed discrete functions in a hierarchical system, satisfying structure requirement).  Judged by these standards, the Amended Complaint sufficiently alleges the existence of an enterprise.

6

### 3. Standing

18 U.S.C. § 1964(c) creates a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ." Count I alleges Plaintiff was injured by virtue of violations of subsections (a) through (c) of section 1962, and Count II alleges Plaintiff was injured by violations of subsection (d). Hometown argues Plaintiff lacks standing under subsections (a), (b) and (d).[2]

Section 1962(a) makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . to use or invest . . . any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which may affect, interstate or foreign commerce." The subsection proceeds to declare that the purchase of securities on the open market without the intent of controlling or participating in the control of the issuer is not covered by this prohibition. The Eighth Circuit, like the majority of courts to address the issue, has held "RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)." Fogie v. THORN Americas, Inc., 190 F.3d 889, 895 (8th Cir. 1999); see also Regions Bank v. J.R. Oil Co., 387 F.3d 721, 728 (8th Cir. 2004) (plaintiff's injuries must be as a result of, or caused by, the violation of section 1962). This conclusion was reached because the civil action exists for people who are injured "by reason of" a violation of section 1962, indicating the injury suffered must be caused by the violation in question – which, for purposes of section 1962(a), is the investment of racketeering income. Fogie, 190 F.3d at 895. Plaintiff alleges to have been injured by virtue of the underlying racketeering activity, which is actionable under section 1962(c). E.g., Bowman v. Western Auto Supply Co., 985 F.2d 383, 386 (8th Cir.), cert. denied, 508 U.S. 957 (1993); Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc., 772 F.2d 467, 473 (8th Cir. 1985), cert. denied, 475 U.S. 1082 (1986); see

---

[2]The caption of Hometown's argument includes subsection (c), but the body of its argument does not.

7

also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495 (1985). However, Plaintiff does not allege to have been injured by Hometown's investment of the income from racketeering activity, so Plaintiff has not stated a claim under section 1962(a).

Section 1962(b) prohibits "any person through a pattern of racketeering activity" from acquiring or maintaining an interest or control of an enterprise. Applying the causation analysis discussed above, this section applies only if Plaintiff contends Hometown employed racketeering activity to acquire an interest in or control of *Plaintiff*. This is not Plaintiff's allegation, so a claim under section 1962(b) has not been asserted.

Finally, subsection (d) makes it unlawful to conspire to violate any of the other three subsections. Hometown's primary argument rests on its allegations regarding the substantive claims. As noted earlier, Plaintiff's claims predicated on 1962(c) will not be dismissed, so to that extent Plaintiff's conspiracy claim survives.

The Court concludes Counts I and II must be dismissed to the extent they assert violations of, or conspiracies to violate, sections 1962(a) and (b). These counts survive to the extent they assert violations of, or a conspiracy to violate, section 1962(c).

### C. Common Law Fraud

The elements of fraud include, *inter alia*, a false representation of fact. Hometown argues[3] an appraisal is not a statement of fact but rather an opinion about a property's value. All parties agree the general rule in Missouri is that opinions about value cannot form the basis for a fraud claim. This general rule (like many general rules) contains exceptions, only one of which needs to be addressed here. An opinion as to value of property "amounts to fraud if the representing party has, or holds himself out to have, special knowledge as to the value; and the representing party, knowing the other party is ignorant, makes a false representation as to value intending it to be relied

---

[3]Hometown also reasserts its arguments regarding Rule 9(b)'s pleading requirements, and those arguments are rejected for the reasons previously stated.

8

on." Arnold v. Erkmann, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996); see also Shephard v. Woodson, 328 S.W.2d 1, 6-7 (Mo. 1959); Mitchell v. Mitchell, 888 S.W.2d 393, 397 (Mo. Ct. App. 1994); Alexander v. Sagehorn, 600 S.W.2d 198, 201 (Mo. Ct. App. 1980).

As a certified appraiser, Hometown held itself out as having special knowledge and expertise that could be relied upon by others, including Plaintiff. By virtue of its asserted expertise, Hometown knew its opinion as to value would be relied on as a fact by other participants in the real estate financing business, and further knew Plaintiff did not have the same information and expertise. Additionally, Plaintiff alleges Hometown purposely utilized improper procedures (including the fabrication of facts about the properties in question and the intentional departure from proper appraisal methods) to justify an artificial and false value. Under these circumstances, Hometown's representations about value are more than mere opinions and, if Plaintiff can prove Hometown intentionally misstated the values with the intent Plaintiff rely upon them, a fraud claim may be proved.

### D. Negligent Misrepresentation/Negligence

Hometown argues it did not owe a duty to Plaintiff because it did not have a contractual relationship with Plaintiff. Hometown's argument does not completely state Missouri law on the subject:

> Although Missouri courts recognize a theory of recovery for negligent misrepresentation, liability is limited to the "narrow confines" of § 552 of the Restatement (Second) of Torts. Section 552(2) [of the] Restatement provides that liability for negligent misrepresentation is limited to loss suffered:
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

9

>    (b) through reliance upon it in a transaction that he intends
>    the information to influence or knows that the recipient so
>    intends or in a substantially similar transaction.

MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d 563, 564 (Mo. Ct. App. 1993). It is not enough to argue the third-party's reliance on the misrepresentation was reasonably foreseeable; the alleged tortfeasor must have actual knowledge both of the third-party's identity and the intent that the third-party's rely on the representation. Id. at 565-66. Plaintiff's allegation that Hometown knew its appraisal would be used to justify a loan application submitted to Plaintiff is sufficient to state a claim under the Restatement as discussed in MidAmerican Bank.

### E. Civil Conspiracy

"A claim of conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (en banc). "Civil conspiracy is not a cause of action in and of itself; rather, it extends liability based on an underlying wrongful act." Mark VII, Inc. v. Barthol, 926 S.W.2d 128, 131 (Mo. Ct. App. 1996) (citing Royster v. Baker, 365 S.W.2d 496, 499 (Mo.1963)). "[T]he doctrine of civil conspiracy extends liability for tort to persons other than the actual wrongdoer but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself." Farmland Industries v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402, 1409 (8th Cir. 1989) (internal quotations and ellipses omitted); see also Gott v. First Midwest Bank of Dexter, 963 S.W.2d 432, 437-38 (Mo. Ct. App. 1998). In other words, it is a theory of vicarious liability, allowing a plaintiff to sue a defendant who did not actually commit a tort so long as the defendant agreed to help – and actually did help – the tortfeasor.

10

Anticipating the underlying tort claims will be dismissed, Hometown argues Plaintiff's civil conspiracy claim must be dismissed as well. The fatal flaw, of course, is that the underlying torts have not been dismissed. Consequently, Count VII will not be dismissed.

### III. CONCLUSION

For these reasons, Hometown's Motion to Dismiss is granted in part and denied in part. All claims premised on 18 U.S.C. § 1962(a) and (b) are dismissed; the motion is denied in all other respects.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: August 21, 2006　　　　　　　　　　UNITED STATES DISTRICT COURT